In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1701

JOSE HERRERA CORRAL,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1432—**Joan B. Gottschall**, *Judge.*

---

ARGUED JANUARY 23, 2007—DECIDED AUGUST 13, 2007

---

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In 2002 Jose Herrera Corral and his father-in-law, Fidel Robeles-Ortega, pled guilty to conspiring to possess cocaine with intent to distribute. Although each defendant's plea agreement specifically reserved the right to appeal the district court's ruling on their joint motion to suppress, only Robeles-Ortega's attorney filed a notice of appeal. Robeles-Ortega's appeal succeeded in this court, and he was released from prison. While Robeles-Ortega's appeal was still pending, however, Herrera Corral filed a federal habeas petition, alleging that his counsel was ineffective because he operated under a conflict of interest and was not available when Herrera Corral tried to inform him that he wished to file an appeal.

After a hearing, the district court denied Herrera Corral's petition, concluding that his attorney's performance was not constitutionally deficient. Because Herrera Corral's counsel remained unreasonably unavailable during the ten-day window to file an appeal, we reverse.

## I. BACKGROUND

In 2001 agents from the Drug Enforcement Administration raided an apartment without a warrant, seized a bag full of cocaine, and arrested Herrera Corral and his father-in-law—the apparent custodians of the seized drugs. Both Herrera Corral and Robeles-Ortega moved to suppress the cocaine, but after the district court denied the motion, they agreed to plead guilty to conspiring to possess and possessing with intent to distribute cocaine, 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846, and both signed conditional plea agreements that reserved their right to appeal the adverse suppression ruling.

The district court sentenced Herrera Corral to the mandatory minimum term of imprisonment—ten years—and found him ineligible to receive a sentence below the mandatory minimum because he was not completely cooperative with the government. *See* U.S.S.G. § 5C1.2 (permitting judges to sentence certain first-time, non-violent drug offenders below the mandatory minimum if they fully cooperate with the government). After the court sentenced Herrera Corral, his attorney did not file a notice of appeal within the required ten days after judgment, Fed. R. App. P. 4(b)(1)(A)(i), despite having preserved in the plea agreement Herrera Corral's right to appeal the adverse suppression ruling. In contrast, Robeles-Ortega appealed the district court's suppression ruling, and we held that the drugs were the result of an illegal search and should have been suppressed. *United States v. Robeles-Ortega*, 348 F.3d 679, 684-85 (7th Cir.

2003). As a result, Robeles-Ortega was released from prison.

While his father-in-law's appeal was pending, Herrera Corral filed a petition in the district court under 28 U.S.C. § 2255, proposing two theories for why his counsel was ineffective. He first claimed that counsel's loyalty to Robeles-Ortega caused him to refrain from advising Herrera Corral to provide information to the government implicating his father-in-law. Second, he contended that counsel did not adequately consult with him about filing an appeal and remained unavailable when Herrera Corral repeatedly attempted to tell counsel to file a notice of appeal.

The district court held an evidentiary hearing on the motion. Herrera Corral first testified about his claim that counsel had a conflict of interest, saying that counsel told him that Robeles-Ortega would pay his $50,000 legal fee. Herrera Corral said that he thought that because Robeles-Ortega paid the attorney's fee, counsel never advised him that he needed to disclose more information to the government to qualify for a sentence below the mandatory minimum. On the other hand, Herrera Corral testified that he told the government everything he knew.

Herrera Corral next addressed his claim that counsel improperly failed to file a notice of appeal. He asserted that prior to sentencing, counsel advised him that the cocaine should have been suppressed, that counsel had friends who could handle an appeal for $10,000, and that he thought that the appeal "had a chance." Herrera Corral said that during the ten days after judgment he tried to tell counsel to file a notice of appeal but could not telephone him directly because he knew from previous experi-

ence that his attorney blocked calls from the prison.[1] Herrera Corral therefore instructed his wife to call. Although she left several messages, counsel did not return any of the calls within the relevant ten days. Herrera Corral testified that his wife also inquired at the office of the clerk of this court about obtaining a public defender for her husband, but was unable to have one appointed.

Herrera Corral's wife and sister also testified at the hearing that counsel spoke to them immediately after sentencing about the possibility of having the appeal handled by another attorney for $10,000 or by a federal public defender. His wife corroborated Herrera Corral's testimony that she tried to call counsel several times about the appeal and that he did not return her calls until after the time to file an appeal had long passed.

Counsel was the next to testify, describing his interactions with Herrera Corral on the day of sentencing. Counsel testified that he met with Herrera Corral prior to the sentencing hearing to discuss the suppression issue. During their conversation, Herrera Corral said that he did not want to appeal but that, despite counsel's request, he also did not want counsel to withdraw. The attorney then recounted a brief meeting he had with Herrera Corral in a holding cell immediately after sentencing, during which he advised Herrera Corral that a potentially meritorious issue remained for appeal, but

---

[1] Before sentencing Herrera Corral attempted to telephone his attorney from prison, but the call did not go through because of a "call result 31," meaning that counsel had placed a block on all calls from the prison to his office. According to counsel, once a person blocks incoming calls from the prison, the intended receiver must affirmatively unblock the calls to receive them. Prison telephone records verify that Herrera Corral's calls to his attorney were blocked.

with regard to representing Herrera Corral on the appeal, "I told him I wouldn't do it." At that point Herrera Corral "just sat on the bench back in the lockup," and said, "'I don't care. I don't care.'"

Counsel concluded that Herrera Corral did not wish to appeal, but the response "surprised" him because "what he was saying was making no sense to me because we had spent all this time and all this effort and we believed we had a meritorious issue." Counsel testified that he inquired no further and that the whole conversation took approximately one to two minutes. Counsel said he then spoke with Herrera Corral's wife and told her that he would not file the appeal because he was "done with the case" and was "basically discharged." He said that he did not recall hearing from Herrera Corral or his family during the next ten days. As for the blocked phone calls that Herrera Corral described, counsel explained that he may have inadvertently blocked calls from the prison because the message from the prison asking for approval to accept calls was in Spanish.

The final witness was one of the attorney's associates, who testified that he and counsel met with Herrera Corral about filing an appeal (he believed the meeting took place before sentencing) and that Herrera Corral indicated that he did not want to appeal. The associate, who served as an interpreter during the meeting, summarized the consultation between counsel and Herrera Corral:

He—he basically—his body language was—I mean, I remember this. He just sat there, he seemed so upset by this. He says no, that's okay, in response to filing the appeal. We reminded him look, you still have a chance to do this, even after you're sentenced, even when you're doing your sentence. You can appeal this. You should appeal this. This was reserved for you, this right. This was a very good thing that was done for

you. Normally you don't get this kind of thing in a plea agreement. Normally those issues are waived, but this was reserved for you, you should do so. And he again just sort of drooped down and said no, that's okay.

Crediting counsel's and his associate's testimony, the district court found that counsel had made reasonable efforts to discover Herrera Corral's wishes and that Herrera Corral "indicated clearly" that he did not want to appeal. Accordingly, the district court denied Herrera Corral's petition, and he appeals.

## II. ANALYSIS

When a district court denies a § 2255 motion, we review the court's findings of fact for clear error and rulings of law de novo. *Hall v. United States*, 371 F.3d 969, 972-73 (7th Cir. 2004).

Herrera Corral argues that counsel's performance was ineffective because he failed to file a notice of appeal, *see* Fed. R. App. P. 4(b)(1)(A), and was not available during the ten days to file an appeal. Although the district court found that Herrera Corral "indicated clearly" to counsel that he did not wish to appeal, this ruling does not resolve whether counsel rendered ineffective assistance by remaining unavailable to Herrera Corral and his wife during the period to file the appeal.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court stated that "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* at 477. And we have held that "[c]ounsel will not be found ineffective per se for failure to appeal an appealable judgment." *Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir. 1992). But neither

the Supreme Court nor this court has ever held that a defendant who initially indicates that he does not wish to appeal cannot reasonably expect counsel's assistance if the defendant has a change of heart before the window to file an appeal closes.

The district court addressed this point only briefly, saying in a footnote, "Herrera Corral provides no support for the argument (and the court cannot find any) that an attorney has a duty to be reachable by his client after his client has discharged him." The district court never found, however, that counsel was discharged. In fact, counsel's own testimony—which the district court credited—indicates that he was not discharged, but rather unilaterally quit. Counsel testified that before sentencing he offered to withdraw, but Herrera Corral "asked me not to do that." After sentencing, despite Herrera Corral's request that he not withdraw from representation, counsel told Herrera Corral that he "wouldn't do" the appeal. Counsel reiterated during cross examination that "I had even offered to withdraw, and he said no, he didn't want me to withdraw after all the other issues that had developed. That's why I went to [Herrera Corral's wife] and said: I can't do this appeal." Importantly, counsel never said that he sought permission from this court—or any court—before deciding to withdraw; that decision was impermissible without leave from this court.

In *United States v. Flowers*, 789 F.2d 569, 570 (7th Cir. 1986) (per curiam), we ruled that only this court may allow defense counsel to withdraw after judgment in the district court has been entered. While the situation in *Flowers* was slightly different than the facts presented here because the defendants' attorneys in *Flowers* moved to withdraw after filing notices of appeal, the concerns here are the same. *Flowers* relies on what was then Circuit Rule 2(c) (the current Rule 51(a) uses the same text), which stated that "[t]rial counsel in a criminal case,

whether retained or appointed by the district court, is responsible for the continued representation of the client desiring to appeal unless specifically relieved by the court of appeals upon a motion to withdraw." *Id.* at 570 n.1 (quoting Circuit Rule 2(c)). We stated that the policy informing this rule was "our responsibility of ensuring that trial counsel perfects a defendant's appeal," and we stated that "[w]e have seen too many examples of criminal defense attorneys wanting to bail out on appeal while leaving their clients in the lurch." *Id.* at 570. The rule of course references a "client desiring to appeal," but the decision whether to appeal is not final until the time to perfect an appeal has expired. *See id.* (noting this court's responsibility to ensure that counsel perfect an appeal after sentencing). Between entry of judgment and the close of the appeal window, counsel must not be allowed to withdraw precisely because a client who initially decides not to appeal might change his mind, and—as we have seen in this case—the consequences of the lawyer simply walking off can be too high. Of course, a defendant who has a change of heart and makes no real effort to inform counsel is not entitled to relief. Moreover, although we conclude that an attorney should remain available to a client during the relevant ten-day period, we are not suggesting that the attorney must adjust his or her schedule in anticipation of the client's decision to appeal. Rather, we simply hold that when a criminal defendant has made reasonable efforts to contact his lawyer about an appeal during the ten-day period, his lawyer must make a reasonable effort to reach the client before the time for filing a notice of appeal expires.

Therefore, we must now ask whether the attorney remained reasonably available to Herrera Corral during that ten-day period, and in doing so we look both to Herrera Corral's efforts and counsel's behavior. Looking at the facts credited by the district court, it is evident that

rather than remaining available, the attorney actually avoided contact from Herrera Corral and his wife. Herrera Corral's wife testified that she repeatedly called counsel for assistance during the ten-day appeal period, but that her phone calls were not returned. This is consistent with her testimony that she sought help from other quarters as well: at the Federal Public Defender's office and at the office of the clerk of this court. Counsel claims he does not recall receiving any of her messages. But the district court never found that Herrera Corrals' wife was not credible concerning placing these calls, stating only, "[w]hile the court found Herrera Corral's wife and sister to be somewhat credible, any weight accorded to them does not tip the balance in Herrera Corral's favor in light of the strength of [counsel] and [his associate's] testimony." Considering the court's suggestion that the attorney was not required to be reachable, this statement seems to indicate that the district court thought the later phone calls didn't matter, not that they didn't happen. Moreover, telephone records from the prison establish that Herrera Corral's phone calls to his lawyer were in fact blocked as Herrera Corral described. The court's findings demonstrate that the attorney was not merely unavailable; his failure to return some phone calls and his blocking of others were affirmative steps to prevent his client from reaching him during this crucial time frame. Counsel took affirmative actions to avoid his client and was therefore unreasonably unavailable and his representation was constitutionally deficient.

Additionally, counsel's deficient performance prejudiced Herrera Corral, who would have filed an appeal but for his attorney's actions. "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Flores-Ortega*, 528 U.S.

at 484. Herrera Corral's wife said—in testimony that the district court did not discredit—that she tried to reach the attorney because Herrera Corral wanted to file an appeal. Because counsel did not return her calls, Herrera Corral was deprived of an appeal that he would have otherwise taken. Herrera Corral has therefore established a successful ineffective assistance of counsel claim and he is entitled to an appeal.

Because we have already decided that counsel's assistance was ineffective, it is not necessary to address Herrera Corral's second argument that counsel operated under a conflict of interest, which deterred him from advising Herrera Corral to provide more information about his father-in-law. But we note that Herrera Corral has consistently maintained that he told the government everything he knew and that he told them the truth. Herrera Corral therefore likely could not establish that the presumed conflict adversely affected his representation. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004).

## III. CONCLUSION

Because counsel rendered ineffective assistance, the district court's judgment is REVERSED and the case is REMANDED for the entry of an order granting the petition for a writ of habeas corpus. Under Circuit Rule 40(e), this opinion was circulated to all the active judges of this court, and none voted to hear the case en banc.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*